Thomas Griffin (No. 022475)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
ttg@yprklaw.com

Attorneys for Plaintiff Randy Hegedus

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Randy Hegedus, | No. |
| --- | --- |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| JPMorgan Chase Bank, N.A., | |
| Defendant. | **(Demand for Jury Trial)** |

Plaintiff Randy Hegedus ("Hegedus"), for his Complaint, alleges the following against Defendant JPMorgan Chase Bank, N.A. ("Chase"):

1. Hegedus is a 67-year-old who resided in Arizona at all relevant times.

2. Chase is a corporation authorized and doing business in Maricopa County, Arizona, and is an employer subject to the requirements of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*; 2) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; and 3) the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*

3. This action is brought pursuant to the ADA, the ADEA and the FMLA.

4. Jurisdiction is conferred upon the United States District Court by 28 U.S.C. § 1331.

5. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b).

///

///

6. Hegedus began his employment with Chase in or about June 2008 and Hegedus remained a Chase employee until his employment was terminated on or about February 14, 2019.

7. Hegedus became a Home Lending Advisor in or about 2010 and remained in that position until his employment ended.

8. At all times, Hegedus' job performance was at least satisfactory.

9. In fact, Hegedus excelled in his role; he was a member of the President's Club (top 5% of his sales group); in 2016 he ranked number seven—based on funded units loaned—out of approximately 400 refinance loan officers; and in 2017 he ranked number four—based on funded units loaned—out of approximately 400 refinance loan officers.

10. Further, at all relevant times, Hegedus suffered from depression and anxiety, both of which substantially limit his ability to perform major life activities and are disabilities under the ADA.

11. But, at all relevant times, Hegedus could perform the essential functions of his position as a Home Lending Advisor, and numerous other positions within Chase, with or without reasonable accommodations.

12. Chase was aware of Hegedus' disabilities at all relevant times.

13. In fact, in or about late June 2018, Hegedus went on FMLA leave to help treat his disabilities.

14. Hegedus' FMLA leave was required, at least in part, because of the impact of the discriminatory treatment—based on his age—that Chase subjected Hegedus to.

15. For example, during his employment, Hegedus was constantly called "old man," "over the hill" and references were made to Alzheimer's and dementia.

16. Also during his employment, Hegedus' coworkers made numerous harassing and discriminatory statements regarding his age including but not limited to the following: "unfortunately unless Hegedus doesn't use a blue pill he doesn't get a happy ending"; "Randy's social security number is only 48"; "[Hegedus] financed

Lincoln's log cabin. And the Louisiana purchase"; "[Hegedus'] First financing was the Louisiana purchase"; "[Hegedus'] NMLS id is 11 (*loan originator national ID#, usually 6 or 7 digits*)"; "Hegedus took training with JPM"; "Hegedus used to hang out with Beethoven"; "Do you remember drumming and writing on cave walls?"; "Pretty good for a guy with dementia (*talking about sales metrics*)"; "[Hegedus] was in Arcadia when the first railroad went through. Right alongside of George Washington"; "I'm not saying Hegedus is old but his first computer was a sundial. [Hegedus] worked for the company that invented fire"; "hey [Hegedus]—did you see our online pictures? Was yours pained by Michaelangelo?" and "Hegedus' Alzheimer must be kicking in."

17. Hegedus was also denied multiple promotional and/or favorable transfer opportunities that were instead given to less qualified coworkers who are significantly younger than Hegedus.

18. For example, in May 2018 Hegedus was denied a mortgage sales position in Chase's purchase division.

19. 42 people applied for 36 positions in Chase's purchase division and even though Hegedus was the number one performer in the Phoenix refinance division in 2017, Chase selected multiple younger, less qualified, and less experienced loan officers than Hegedus.

20. Four selected applicants declined the promotion to a mortgage sales position in Chase's purchase division, but Hegedus was not selected to replace any of them, instead Chase again selected four significantly younger, less experienced and less qualified loan officers than Hegedus.

21. Chase's discriminatory and harassing actions included placing Hegedus on an unsubstantiated Performance Improvement Plan ("PIP") dated December 1, 2017.

22. The PIP did not even identify the policy Chase has alleged Hegedus violated, instead the PIP asserted Hegedus must adhere to its attendance policy, which was never at issue.

///

23. Chase's discriminatory and harassing actions exacerbated Hegedus' condition so severely that he had to take FMLA leave from in or about June 25, 2018 to in or about September 17, 2018.

24. Following his return from FMLA leave, Chase continued subjecting Hegedus to adverse actions including passing him over for promotions/transfers and instead placing significantly younger and less qualified employees.

25. For example, after he returned from his FMLA leave, Hegedus was denied another mortgage sales position in new purchases.

26. All five loan officers selected for the mortgage sales position in new purchases were younger, less experienced and less qualified than Hegedus; and two of the selected applicants were hired from outside of Chase despite the company's policy of hiring from within.

27. Two months after his return from FMLA leave, Chase gave Hegedus a Written Warning for something a client overheard him say and for which Hegedus acknowledged and apologized for.

28. Chase chose not to terminate Hegedus at that time, but Chase kept the Written Warning in effect until February 15, 2019.

29. Despite his years of excellent service and objectively solid work as a loan officer, on or about February 14, 2019, one day before the end date of the Written Warning, Chase terminated Hegedus' employment for alleged performance struggles.

30. On or about February 28, 2019, Hegedus filed a Charge of Discrimination (No. 540-2011-03009) with the Equal Employment Opportunity Commission ("EEOC") alleging that Chase discriminated against and harassed him because of his age and disabilities and that Chase retaliated against him for taking leave to treat his disabilities.

31. On or about December 13, 2021, the EEOC issued Hegedus a Notice of Right to Sue.

32. Hegedus has met all administrative prerequisites to bring this lawsuit.

///

## COUNT ONE

### (Discrimination in Violation of the ADEA)

33. Hegedus incorporates by reference all previous allegations as though set forth fully herein.

34. Hegedus is 67 years old.

35. Hegedus' coworkers repeatedly made harassing and discriminatory comments to and/or about Hegedus regarding his age.

36. Chase treated Hegedus less favorably than his significantly younger coworkers.

37. Chase's disparate treatment of Hegedus—based on his age—included, but was not limited to, failing to promote and/or transfer him to favorable positions and instead promoting and/or transferring significantly younger, less qualified and less experienced coworkers; and also terminating Hegedus for alleged performance issues even though his performance exceeded that of his significantly younger coworkers whose employment was not terminated.

38. As a result of Chase's actions, Hegedus has suffered and continues to suffer lost wages, lost benefits and consequential damages.

39. Chase's actions were done with malice or with reckless indifference to Hegedus' federally-protected rights.

## COUNT TWO

### (Discrimination in Violation of the ADA)

40. Hegedus incorporates by reference all previous allegations as though set forth fully herein.

41. Hegedus has multiple medical impairments that substantially limit one or more of his major life activities.

42. Hegedus was a qualified individual because, with or without reasonable accommodations, he was able to perform the essential functions of the position he held and multiple other positions within Chase.

43. Chase terminated Hegedus because of his medical impairments.

44. As a result of Chase's actions, Hegedus has suffered and continues to suffer lost wages, lost benefits and consequential damages.

45. Chase's actions were done with malice or with reckless indifference to Hegedus' federally-protected rights.

### COUNT THREE
### (Retaliation in Violation of the ADA)

46. Hegedus incorporates by reference all previous allegations as though set forth fully herein.

47. By requesting medical leave to treat his disabilities, Hegedus requested a reasonable accommodation and, as such, Hegedus engaged in protected activity under the ADA.

48. After Hegedus engaged in protected activity, Chase retaliated against Hegedus by terminating his employment.

49. There is a causal connection between Hegedus' protected activity and the termination of his employment.

50. As a result of Chase's actions, Hegedus has suffered and continues to suffer lost wages, lost benefits and consequential damages.

51. Chase's actions were done with malice or with reckless indifference to Hegedus' federally-protected rights.

### COUNT FOUR
### (Violation of the FMLA)

52. Hegedus incorporates by reference all previous allegations as though set forth fully herein.

53. Hegedus took FMLA leave to care for his own medical conditions.

54. Hegedus' use of FMLA protected leave constituted a negative factor in Chase's decision to terminate his employment.

55. As a result of Chase's actions, Hegedus has suffered and continues to suffer lost wages, lost benefits and consequential damages.

56. Chase's actions were done with malice and/or reckless indifference to Hegedus' federally-protected rights.

WHEREFORE, Plaintiff Randy Hegedus respectfully requests that this Court grant judgment in his favor and against Defendant JPMorgan Chase Bank, N.A. as follows:

    A.    For an award of economic damages in an amount sufficient to make Hegedus whole for past and future lost income and benefits and other economic losses suffered by Hegedus resulting from Chase's conduct;

    B.    For an award of consequential damages;

    C.    For an award of liquidated damages;

    D.    For an award of Hegedus' costs of suit incurred herein;

    E.    For an award of attorneys' fees and related expenses pursuant to 29 U.S.C. § 216; 29 U.S.C. § 626; 29 U.S.C. § 2617(a)(3); 42 U.S.C. § 12205;

    F.    For an award of prejudgment and post-judgment interest; and

    G.    For an award of such other legal and equitable relief as this Court deems just and proper.

DATED this 9th day of February 2022.

    YEN PILCH ROBAINA & KRESIN PLC

    By /s/ Thomas Griffin
        Thomas Griffin
        Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this matter as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

                                      YEN PILCH ROBAINA & KRESIN PLC

                                      By /s/ Thomas Griffin
                                            Thomas Griffin
                                            Attorneys for Plaintiff